UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH V., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner of Social Security,[1] <br><br> Defendant. | Case No.: 21-cv-0003-LL-MMP <br><br> **REPORT AND RECOMMENDATION RE PLAINTIFF'S OPENING BRIEF** |

## I.   INTRODUCTION

This Report and Recommendation is submitted to United District Judge Linda Lopez pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

Plaintiff Kenneth V. ("Plaintiff"), proceeding pro se and in forma pauperis, seeks judicial review of the Commissioner of Social Security Administration's ("Commissioner"

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Martin O'Malley is substituted for Kilolo Kijakazi, the former Acting Commissioner of Social Security, as the Defendant in this suit.

or "Defendant") decision denying Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. [ECF Nos. 1, 35.] Plaintiff filed an Opening Brief, Defendant filed a Cross-Motion for Summary Judgment, and Plaintiff replied. [ECF Nos. 35, 36, 41.] After careful consideration of the Parties' submissions, the administrative record, and the applicable law and for the reasons discussed below, the Court **RECOMMENDS** that the District Judge **AFFIRM** the Commissioner's denial of benefits.

## II. BACKGROUND

### A. Procedural History

On October 12, 2018, Plaintiff filed a Title II application for DIB without representation, which indicated that the alleged disability began on September 28, 2017. Administrative Record ("AR") 12, 168. Plaintiff alleges that he suffers from Intervertebral Disc Displacement and Unspecified Condition of Left Hip. AR 193. The claim was denied initially on December 13, 2018. AR 101. Plaintiff retained an attorney on January 31, 2019, and requested reconsideration on February 4, 2019, which was denied on February 19, 2019. AR 105, 107, 108. Plaintiff filed a written request for a hearing. AR 114.

On February 6, 2020, ALJ Andrew Verne held a hearing on the matter in which Plaintiff, appearing with counsel, as well as a vocational expert testified. AR 23. In a written decision dated February 26, 2020, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 8, 2017 through December 31, 2018, the date last insured. AR 12–18.

On April 27, 2020, Plaintiff's attorney withdrew as attorney of record, AR 8, and Plaintiff has been proceeding pro se thereafter.

On April 29, 2020, Plaintiff requested review by the Appeals Council. AR 164–66. The Appeals Council denied review of the ALJ's ruling on October 27, 2020, AR 1, and the ALJ's decision thereafter became the final decision of the Commissioner.

### B. Plaintiff's Injury and Subsequent Work History

Plaintiff's alleged disability stems from an accident that occurred while he was working as a Goodwill Donation Center attendee. AR 52–55. Though the record contains

different accountings of the specifics, *see* AR 348–50, the record consistently reports that Plaintiff slipped on an object in the Donation Center on December 31, 2015. AR 53. He subsequently filed a worker's compensation claim. AR 56.

Following the injury, Plaintiff was placed in three different roles to accommodate physician-provided restrictions at those respective times. Plaintiff was provided "temporary transitional accommodations of sedentary work with a 5lb weight restriction at our Rosecrans Retail facility." AR 69, 248 (Plaintiff's submission to Appeals Council stating that he was a dressing room attendant at the Rosecrans location). From July 6, 2016 to March 17, 2017, Plaintiff was accommodated as a Fixed Crew Material Processor. AR 248, 69, 73, 76. Finally, from March 18, 2017 until September 28, 2017, Plaintiff was assigned as a receipt writer at the Rosecrans location. AR 248.

On September 14, 2017, Plaintiff submitted a letter requesting a transfer back to the Fixed Crew Department. AR 71. Marco Guizar, Goodwill San Diego Director of Safety and Asset Protection, stated that the department was one "in which light duty recommendations could be in jeopardy and not conducive to recovery." AR 69. After discussing the matter with Plaintiff, Mr. Guizar determined, because Plaintiff continued to complain that his work assignments were aggravating his injury despite "one year and ten months" of light duty accommodations, the best course of action would be to place Plaintiff on a temporary leave of absence until a physician could provide a return-to-work date. *Id.*

### III. SUMMARY OF ALJ'S FINDINGS

#### A. The Five-Step Evaluation Process

To qualify for DIB under the Social Security Act, a claimant must show that they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for DIB are evaluated in accordance with a five-step sequential analysis. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); 20 C.F.R. §§

404.1520 (2012), 416.920 (2012). First, the ALJ must determine if the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2012). If so, the claimant is not disabled. 20 § C.F.R. 404.1520(b) (2012). Second, the ALJ must then determine if the claimant's alleged impairment is sufficiently severe to limit his ability to work. 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If not, the claimant is not disabled. 20 C.F.R. § 404.1520(c) (2012). Third, the ALJ determines whether the claimant's impairments or combination thereof meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If he does, he is disabled. 20 C.F.R. § 404.1520(d). If not, the ALJ then considers the claimant's residual functional capacity ("RFC"), which is used in the analysis at steps four and five. 20 C.F.R. § 404.1520(e) (2012). Fourth, the ALJ considers the claimant's past relevant work; if the claimant can do his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv), (f) (2012). Finally, if the claimant cannot do his past relevant work, the ALJ assesses the claimant's residual functional capacity, age, education, and work experience to determine if the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v) (2012). At step five, the claimant will be considered disabled only if he cannot make the adjustment to other work. 20 C.F.R. § 404.1520(g) (2012).

The claimant bears the burden of proof in the first four steps of the sequential process. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (2012), 416.905(a) (2012). If the sequential process proceeds to step five, the Commissioner bears the burden of proving that the claimant can make the adjustment to other jobs that exist in sufficient number in the national economy. *Bowen*, 482 U.S. at 146 n.5 (1987); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

### B. The ALJ's Application of the Five-Step Process

The following is a summary of the parts relevant to the issues raised by Plaintiff in his appeal. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 28, 2017, his alleged onset date. AR 14.

At step two, the ALJ found Plaintiff has the following severe impairments: "mild to moderate degenerative disc changes in lumbar spine, degenerative disc disease of the lumbar spine with lumbago, and mild hip osteoarthrosis (with partial tearing of the small anterior labral tear in the left hip)." *Id.* (citing 20 C.F.R. § 404.1520(c) (2012)).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. AR 14–15 (citing 20 C.F.R. §§ 404.1520(d) (2012), 404.1525 (2017), 404.1526 (2017)). The ALJ reasoned that neither the record, diagnostic test results, nor findings reported by Plaintiff's physicians supported a finding of functional limitations that met or equaled the criteria of any listings, specifically citing listings 1.02 and 1.04. AR 15.

The ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), specifically as follows: he can "lift, carry, push and pull 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk 6 hours and sit 6 hours in an 8-hour workday with normal breaks; occasionally climb ramps, stairs, ropes, ladders or scaffolds as well as stoop, kneel, crouch, and crawl; frequently balance; and should avoid concentrated exposure to extreme cold as well as hazards including unprotected heights and dangerous moving machinery." *Id.*

To determine the RFC, the ALJ explained that he considered all of Plaintiff's symptoms and the extent to which they were consistent with the evidence, in accordance with 20 C.F.R. § 404.1529 and SSR 16-3p, as well as medical opinions and prior administrative findings in accordance with the requirements of 20 C.F.R. § 404.1520c. *Id.* The ALJ determined that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, "the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 15–16.

The ALJ found unpersuasive both (1) Anesthesia Pain Nurse Practitioner Christine Mathews' assessment of Plaintiff's limitations and (2) the temporary work restrictions

because they were not entirely consistent with the record. AR 16–17. In contrast, the ALJ found persuasive the Disability Determination Services ("DDS") state agency medical consultants' assessments that Plaintiff was capable of handling "light exertional level, frequent balance, [and] occasional postural abilities" with a limitation to avoid concentrated exposure to extreme cold and hazards persuasive, because they were supported by and consistent with radiographic scans of the back and hip, examinations showing tenderness to palpation in the left hip, some objective findings and physical examinations showing a full range of motion in the left hip and steady gait, and the improvement of pain following left hip bursa injections and physical therapy. *Id.*

At step four, based on the vocational expert's testimony at the hearing, the ALJ determined that Plaintiff was capable of performing his past relevant work as a (1) Deliverer, Outside and (2) Clerk, General Office, which do not require work-related activities precluded by Plaintiff's RFC. AR 17–18. Accordingly, the ALJ found Plaintiff was not disabled, as defined in the Social Security Act, at any time during the pertinent period. AR 18.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may set aside the Commissioner's denial of Social Security benefits only if that decision "was not supported by substantial evidence or is based on legal error." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citing *Ford v. Saul*, 950 F.3d 1141, 1153–54 (9th Cir. 2020)). Under the substantial-evidence standard, courts look to the existing administrative record and ask "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). The standard requires "more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Glanden*, 86 F.4th at 843 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).

//

6

21-cv-0003-LL-MMP

The substantial evidence standard is "a highly deferential standard of review." *Valentine*, 574 F.3d at 690. When the administrative record as a whole and "'the evidence is susceptible to more than one rational interpretation,' the ALJ's decision must be affirmed." *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)).

## V.   DISCUSSION

Plaintiff advances a number of arguments. Plaintiff primarily challenges the established onset date ("EOD") and the ALJ's analysis of records and findings stemming from the EOD. Plaintiff contends the ALJ erred by not setting the EOD as January 2, 2016—the first doctor's visit following his injury—and consequently did not properly consider evidence of "his alleged on-the-job traumatic injurious event," his January 7, 2016 X-ray report, and his March 7, 2016 MRI report. [ECF No. 35 at 1–4.]; AR 252. Plaintiff argues had those records been properly considered, the ALJ's findings at steps three, four, and five and the RFC determination would be errors. First, Plaintiff contends that he has an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. [ECF No. 35 at 4]; AR 253–57. Second, Plaintiff contends he has the RFC to perform sedentary work with the further restriction that he be allowed to sit-stand at fifteen-minute intervals, he is unable to perform any past relevant work, and given his advanced age, high school education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that he can perform. [ECF No. 35 at 5]; AR 258.

Defendant urges the Court to affirm the ALJ's decision, arguing that it was supported by substantial evidence. Specifically, Defendant contends that substantial evidence supported (1) the ALJ's RFC determination because the medical record indicated that Plaintiff presented in no distress, walked with steady gait without assistance, retained good ranges of motions, had no deformities or atrophy in his hips, and had a negative straight leg raise test, [ECF No. 36 at 6 (citing AR 16–17, 407, 413, 422, 425)]; (2) Plaintiff experienced some improvement with treatment, [*id.* (citing AR 16–17, 406, 412–13, 588)];

and (3) the prior administrative findings from Drs. Masters and Hanna supported the RFC. [*Id.* at 6–7.] Furthermore, Defendant contends that the ALJ did not ignore but instead explicitly referred to the 2016 X-ray and MRI evidence. [*Id.* at 7–8.]

## A.    Disability Onset Date

### 1.    Alleged Onset Date (AOD)

Plaintiff challenges the September 28, 2017 date used by the ALJ, which he terms as the EOD and the potential onset date. [ECF No. 35 at 3–4]; AR 252. He argues that the ALJ erred in considering September 28, 2017 as the disability onset date because between January 2, 2016 and September 28, 2017, Plaintiff's work constituted unsuccessful work attempt periods, which could allow a disability examiner to establish an earlier EOD. [ECF No. 35 at 1–3]; AR 252. In response, Defendant argues that the ALJ's use of a September 28, 2017 onset date was proper because Plaintiff alleged that date in his DIB application and "does not point to any evidence compelling finding limitations beyond his restrictive RFC as a matter of law at any point in time, including prior to Plaintiff's alleged onset date." [ECF No. 36 at 7.] The ALJ refers to September 28, 2017 only as the alleged onset date ("AOD"), so the Court will review the AOD for error.

Plaintiff filed his application for DIB via face-to-face interview at the Social Security Administration Field Office on November 11, 2018, during which he stated that he stopped working on September 28, 2017. AR 189–202. Plaintiff's disability application indicated that the alleged onset date was also September 28, 2017. AR 193. The same AOD was stated on Plaintiff's Disability Determination Explanations at the Initial and Reconsideration Levels, both of which were provided to Plaintiff. AR 80, 90.

The Social Security Program Operations Manual System ("POMS") provides that a claimant can amend their AOD "by contacting [the Administration] via letter, telephone, visiting a field office, or by providing testimony at a hearing." Soc. Sec. Admin. Program Operations Manual System DI 25501.230 (May 23, 2023). POMS further provides that the Social Security Administration "will allow the claimant to amend his or her AOD any time *up to the date of the DDS determination*." *Id.* (emphasis added). At no point in the DIB

application or reconsideration process did Plaintiff request to amend his AOD as provided by POMS. *See* AR 107 (Request for Reconsideration confirmation), 114–15 (Request for Hearing by Administrative Law Judge confirmation), 164–66 (Request for Reconsideration form), 168–72 ("Application Summary for Disability Insurance Benefits," including an instruction to "[r]eview the summary to make sure we recorded your statements correctly"), 210–14 ("Disability Report – Appeal"), 244–47 (Hearing Brief to Office of Hearing Operations). In fact, he reaffirmed this AOD in his brief to the ALJ. AR 244 (Plaintiff stated that "he became unable to work on September 28, 2017" and provided that was his alleged date of disability). Plaintiff raises issue with the September 28, 2017 date for the first time *after* the DDS determination in his brief to the Appeals Council. AR 252. Accordingly, as Plaintiff represented his alleged onset date was September 28, 2017 and never sought to amend it, the ALJ did not err.

Furthermore, as discussed below, the ALJ considered all of the pertinent records from January 2, 2016 to September 28, 2017 in his written decision. AR 15–17. In other words, the ALJ considered the same evidence that he would have if the alleged onset date used was January 2, 2016. Plaintiff has accordingly failed to establish harmful error as the calculation of his AOD. *See Kelly M-S. v. Comm'r of Soc. Sec.*, No. C18-5155, 2018 WL 5240540, at *4 (W.D. Wash. Oct. 22, 2018) (finding that the ALJ did not err where Plaintiff had not moved to amend the AOD, counsel's pre-hearing brief reaffirmed the AOD, and the record indicated that Plaintiff had the capacity to work); *see also Shultes v. Colvin*, No. C13-1448, 2014 WL 4723883, at *4 (W.D. Wash. Sept. 23, 2014) (declining to consider Plaintiff's request to amend the AOD because the "Court's review is limited to the administrative record before the Commissioner") (citing 42 U.S.C. § 405(g)).

    2.    Established Onset Date (EOD)

To the extent Plaintiff challenges the ALJ's decision for failing to find an EOD, there was also no error. "Generally, the EOD is the earliest date that the claimant meets both the definition of disability and the non-medical requirements for entitlement to benefits under title II of the Act or eligibility for SSI payments under title XVI of the Act during the period

covered by his or her application." SSR 18-1p (Oct. 2, 2018). Although Plaintiff is correct that the EOD can be "the same as, earlier than, or later than the claimant's alleged onset date [("AOD")]" and that work activity does not preclude an earlier EOD when the work attempt was unsuccessful, an EOD determination at this point is premature—an ALJ makes an EOD determination *after* a finding of disability. *Id.* ("If we find that a claimant meets the statutory definition of disability and meets the applicable non-medical requirements during the period covered by his or her application, we then determine the claimant's EOD."); *see Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (Because the ALJ found the plaintiff was not disabled, "the question of *when* he became disabled did not arise."); *SB v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01842, 2021 WL 5150092, at *5 (D. Ariz. Nov. 5, 2021) (holding that the EOD inquiry pertains to onset date of disability made after a favorable determination of disability). Accordingly, the ALJ did not make a finding of EOD; nor was that finding required, because there was no finding of disability.

### B. Plaintiff's Records Prior to September 28, 2017

Through his various filings, Plaintiff contends that the ALJ failed to properly evaluate numerous evidence that pre-dates the alleged onset date of September 27, 2018, to include the evidence of his on-the-job injury on December 31, 2015, his "medically required modified special condition accommodation changes of duty," the January 7, 2016 X-Ray report, the March 7, 2016 MRI report, and the deposition testimony of Dr. Frank Kevin Yoo. [ECF No. 35 at 3–4.]

Regardless of the AOD, the ALJ is required to "consider all evidence in [the claimant's] case record when [they] make a determination or decision whether [the claimant is] disabled." 20 C.F.R. § 404.1520. Though "[m]edical opinions that predate the alleged onset of disability are of limited relevance" and can be given less weight accordingly, the evidence between December 31, 2015 and September 28, 2017 is particularly relevant in this case because the AOD is not the same date as the injury. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). As such, the ALJ was required to consider Plaintiff's records prior to the AOD.

Accordingly, the Court considers Plaintiff's argument that the ALJ failed to properly consider the various forms of evidence that predate the September 28, 2017 AOD in turn.

### 1. Evidence of Plaintiff's On-the-Job Injury

First, "Plaintiff contends that the SSA's overall review erroneously rejected plaintiff's medical and non-medical documented evidence of . . . his alleged on-the-job traumatic injurious event of 12/31/2015." [ECF No. 35 at 3.] In response, the Commissioner correctly points out that "the ALJ explicitly referred to the December 2015 work injury in his written decision." [ECF No. 36 at 7.] The Court construes Plaintiff's argument liberally as additionally referring to the medical records and the work limitations associated with his injury. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of [a pro se plaintiff's complaint], however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citation omitted).

Prior to September 28, 2017, the administrative record contains six non-specialty visits with various providers, one orthopedic spine consultation with Dr. Paul Kim, one radiographic evaluation, one MRI evaluation, one X-Ray, one Qualified Medical Examination, two VA consults, one physical therapy visit, and one chiropractor visit. In his written decision, the ALJ found "not persuasive the temporary work restrictions." AR 17 (citing AR 268–72, 274, 293, 298, 303–06). Plaintiff's January 2 and 7, 2016 visits restricted Plaintiff to sedentary work, standing and walking to two hours per day, limited stooping and bending, no kneeling or squatting, and limited lift, pull, and push to five pounds. AR 272, 278. Plaintiff's March 2016 visits continued to provide for modified work, specifically requiring frequent change in position, limited standing or walking, limited stooping and bending, limited kneeling or squatting, and limited lifting to twenty-five pounds. AR 296, 301, 306. Plaintiff's Primary Treating Physician's Initial Basic Comprehensive Medical-Legal Evaluation Report dated June 12, 2017 also limited lifting to twenty-five pounds and restricted repetitive bending at the waist. AR 324.

//

To determine a claimant's RFC, an ALJ evaluates the persuasiveness of medical opinions,[2] 20 C.F.R. § 404.1545(a)(3), using factors listed in paragraphs 20 C.F.R. § 404.1520c(c)(1) through (5). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). When performing this evaluation, the most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(a). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Consistency means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ must articulate their consideration of the medical opinion evidence, including how persuasive they find the medical opinions in the case record and how they considered the "supportability" and "consistency" factors. 20 C.F.R. § 404.1520c(b). However, the ALJ is not required to explain their consideration of the remaining factors. *Woods*, 32 F.4th 785, 791–92 (9th Cir. 2022).

The ALJ properly weighed Plaintiff's medical opinions relating to his worker's compensation claim, explaining that he found the temporary work restrictions unpersuasive because they "are not supported by and consistent with the record." AR 17. First, the ALJ

---

[2] "A medical opinion is a statement from a medical source about what you can still do despite your impairments and whether you have one or more impairment-related limitations or restrictions. . . ." 20 C.F.R. § 404.1513(a)(2).

identified physical examinations showing a full range of motion in the left hip and a steady gait, improvements with left hip bursa injections, physical therapy, and pain therapies. *Id.* (citing AR 413, 567). Second, the ALJ pointed to an August 14, 2018 VA San Diego Healthcare visit where Plaintiff reported no pain. AR 412. Substantial evidence supports the ALJ's determination that the temporary work restrictions were not supported by or consistent with the record and were therefore not persuasive. *See Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)) (finding substantial evidence supporting the ALJ's finding that a medical opinion was unpersuasive where the ALJ identified the doctor's unremarkable observations).

Lastly, the ALJ noted the assessments made during this period "were made to reflect temporary work restrictions and intended for worker's compensation purposes." AR 17. Although an "ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding," nor can he reject a medical opinion because of the "purpose for which medical reports are obtained," *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) (quoting *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995)), the ALJ is permitted to consider these opinions within context. The initial, more limited restrictions of sedentary work, were provided prior to an MRI evaluation and Plaintiff's doctors updated the restrictions following the MRI evaluation, removing the sedentary work restriction and increasing the lift restriction to twenty-five pounds. *See* AR 268, 274. Notably, the RFC is more restrictive than the latter, post-MRI temporary work restriction, as the ALJ found Plaintiff could lift, carry, push, and pull twenty pounds occasionally and up to ten pounds frequently. AR 15. The Court finds that each justification provided by the ALJ constitutes substantial evidence to support the ALJ's finding that the temporary work restrictions were not persuasive.

2.   <u>Radiologic Evidence</u>

Next, Plaintiff appears to argue the ALJ erred by ignoring medical evidence of an X-ray dated January 7, 2016 and an MRI dated March 7, 2016, which Plaintiff contends demonstrate impairments at step three. [ECF No. 35 at 4 (citing AR 280–82).] The ALJ

did not err in his evaluation of the radiographic evidence. In finding that Plaintiff's statements about the severity of his symptoms were "not entirely consistent with the medical evidence and other evidence," the ALJ considered the January 7, 2016 X-ray and the March 7, 2016 MRI—citing both in his opinion. AR 16. The ALJ found these, among other medical evidence including Plaintiff's medical visits and physical examinations during this period, to support a light exertional level with postural and environmental limitations. AR 16–17. Though the ALJ only discusses the more recent March 7, 2016 MRI in detail, the MRI findings are consistent with the findings from January 7, 2016 X-Ray, indicating mostly normal, mild, and moderate findings. *Compare* AR 280 *with* AR 282. Thus, contrary to Plaintiff's argument, the Court finds that the ALJ properly considered the 2016 radiographic evidence.

### 3. Deposition of Dr. Frank Kevin Yoo

Plaintiff next argues the ALJ "erroneously rejected" the deposition testimony of Dr. Frank Kevin Yoo, a neurosurgeon who performed three Qualified Medical Examinations ("QME") for Plaintiff's worker's compensation claim. [ECF No. 35 at 4.] Dr. Yoo's QMEs includes a comprehensive review of Plaintiff's medical records and findings from his examination of Plaintiff as it related to Plaintiff's worker's compensation claim. However, the QMEs, written for the purposes of Plaintiff's workers compensation claims, focus on the diagnoses, whether Plaintiff had reached Maximum Medical Improvement, and the cause of Plaintiff's impairments—e.g., whether it was a workplace injury. *See* AR 348–50. The QMEs do not address Plaintiff's impairment-related limitations. AR 337–50, AR 355–62, AR 386–87; *see* 20 C.F.R. § 404.1545 (2012) (providing that the ALJ "will consider all of the medical and nonmedical evidence" to assess "the total limiting effects of [a claimant's] impairments," but the focus is on a claimant's ability to meet the "physical, mental, sensory, and other requirements of work and related limitations"). As such, Dr. Yoo's statements are "Other Medical Evidence." 20 C.F.R. § 404.1513 ("Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity

of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."). Plaintiff submitted to the ALJ a deposition taken of Dr. Yoo from his worker's compensation appeal. AR 485–500. Dr. Yoo's deposition mirrors his QMEs with more explanations in lay terms. *See* AR 488–500.

In his opening brief, Plaintiff cites the material portions of Dr. Yoo's deposition, asserting the ALJ erred by rejecting and failing to consider them. [ECF No. 35 at 4.] As a preliminary matter, the ALJ did not reject Dr. Yoo's deposition. Rather, during Plaintiff's hearing, the ALJ asked Plaintiff's attorney why he was to read the deposition, as it is not typically the type of evidence provided to ALJs for consideration. AR 41. In response, Plaintiff's attorney confirmed that the ALJ did not need to read the deposition because "it doesn't really add anything." AR 41–42.[3] Accordingly, contrary to Plaintiff's contention, the ALJ did not "reject" the deposition of Dr. Yoo.

Moreover, the ALJ did not err by not citing the deposition transcript in his opinion, as Dr. Yoo's deposition is cumulative of other evidence already considered by the ALJ. In his opening brief, Plaintiff cites "relevant" portions of Dr. Yoo's deposition that address the March 7, 2016 MRI. [ECF No. 35 at 4–5.] Specifically, Dr. Yoo stated that the MRI showed Plaintiff had disc bulge, facet arthropy, and ligamentum thickening at L4-L5 and smaller disc protrusion at L5-S1, finding multilevel degenerative changes and "severe central canal stenosis with compression of the nerve roots at [L4-L5]." AR 489; *see* AR 342–43; [ECF No. 35 at 4–5.] As explained above, the ALJ did in fact consider the March 7, 2016 MRI, and similarly found that it "showed multilevel degenerative changes, at L4-L5, severe bilateral facet arthropathy and moderate bilateral neural foraminal stenosis, and at L5-S1, moderate central canal narrowing." AR 16 (citing AR 282–83

---

[3] During the hearing, the ALJ asked Plaintiff's attorney "Why am I going to read a deposition; what am I reading that deposition for?" AR 41. To which, Plaintiff's attorney responded "It's a deposition of his doctor; it doesn't really add anything. . . . [Y]ou don't have to." AR 41–42.

(March 7, 2016 MRI)). Thus, the portions of Dr. Yoo's deposition that Plaintiff contends are relevant address evidence that the ALJ already considered and relied on. The Court finds that the ALJ did not err by not citing Dr. Yoo's deposition in his opinion.

Likewise, the ALJ already considered Dr. Yoo's underlying QME, which was the subject of his deposition. AR 16 (citing AR 318) ("1F/ . . . 44"). The ALJ cites the first QME in his written decision, finding it consistent with the objective evidence. *See* AR 16–17. While the ALJ did not separately cite the deposition transcript or Dr. Yoo's other QMEs, the Court finds no error in this regard, as both the QMEs and the deposition are consistent with both the first QME cited by the ALJ and the objective evidence.

In sum, the ALJ properly considered the evidence of Plaintiff's On-the-Job Injury and the 2016 radiological evidence in reaching its non-disability finding. The ALJ did not err in not citing Dr. Yoo's deposition transcript in the opinion.

## VI. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation and (2) **AFFIRMING** the Commissioner's decision.

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the court and served on all Parties no later than **February 16, 2024**. The document should be captioned "Objections to Report and Recommendations."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all Parties no later than **March 1, 2024**. The Parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: February 2, 2024

HON. MICHELLE M. PETTIT
United States Magistrate Judge